**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VICTOR RIVERA RIVERA et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | 3:11-cv-00118-RCJ-VPC |
| vs. ) | |
| ) | |
| PERI & SONS FARMS, INC., ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

This proposed class action arises out of alleged labor violations by a farm with respect to migrant workers from Mexico. Pending before the Court are a Motion to Dismiss (ECF No. 27), a Motion for Leave to File Second Amended Complaint (ECF No. 34), and Motion for Protective Order (ECF No. 36). For the reasons given herein, the Court grants the motion to amend, grants the motion to dismiss as against the Second Amended Complaint ("SAC"), with leave to amend in part, and denies the motion for protective order.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiffs and putative class members are Mexican citizens lawfully admitted to the United States who worked for Defendant Peri & Sons Farms, Inc. ("Peri") in Yerington, Nevada for various periods of time since February 16, 2005. (*See* Second Am. Compl. ¶¶ 1–2, 7, May 16, 2011, ECF No. 34-1). Plaintiffs came to the United States to work pursuant to H2-A guest-worker visas issued pursuant to 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1188(a)(1) and 20 C.F.R. § 655. (*Id.* ¶¶ 9–10).

When an employer applies to the Department of Labor for H-2A clearance orders

("DOLCO"), it must certify that it has complied (or will comply) with certain requirements under Title 20 of the Code of Federal Regulations, and Defendant made such certifications in this case. (*See id.* ¶ 12). Those requirements include: (1) that workers will be paid wages at or above the adverse effect rate ("AER")[1], *see* 20 C.F.R. § 655.122(l); (2) that the employer will comply with all federal and state employment laws and regulations, *see id.* § 655.135(e) and § 653.501(d)(2)(xii); (3) that the employer will provide required tools, equipment, and supplies necessary to the work free of charge, *see id.* § 655.122(f); (4) that the employer will pay for transportation from the worker's home to the place of employment and subsistence en route, *see id.* § 655.122(h)(1); and (5) that the employer will pay for transportation back to the worker's home and subsistence en route if he completes the contract period, *see id.* § 655.122(h)(2). (*See* Second Am. Compl. ¶ 10). Plaintiffs allege that the DOLCOs function as privately enforceable employment contracts between Plaintiffs and Defendant, with the Title 20 requirements as terms. (*See id.* ¶ 14).

Plaintiffs allege that each time they traveled from Mexico to Yerington, Defendant required them to pay for hiring or recruitment fees of between $100 and $500, bus fare, Mexican passports, H-2A visa applications, lodging near the U.S. Consulate in Hermosillo, Mexico, and I-94 forms at the U.S.–Mexico border, for a total cost of over $400. (*See id.* ¶¶ 15–18). They also allege that Defendant never reimbursed them for their return travel to Mexico, costing over $100 for each return trip. (*Id.* ¶ 26). They also allege that the work required the use of protective

---

[1]The AER is calculated by the Department of Labor to reflect the lowest wage a guest worker can be paid without depressing the wages of similarly employed U.S. workers. *See* 20 C.F.R. § 655.200(c). The AER for agricultural employment in Nevada is "the prevailing wage rate[] in the area of intended employment." *Id.* § 655.207(a)–(b). The prevailing wage rate is determined by the Administrator of the local Wage and Hour Division of the Employment Standards Administration of the Department of Labor, *see* 29 C.F.R. § 1.2(c), who makes the calculation according to predetermined standards, *see id.* § 1.2(a). It is not clear where these rates are published, and Plaintiff does not identify where the prevailing wage rates it provides are published, but the allegation that the wages paid were below the rates cited is sufficient for the purposes of a motion to dismiss.

1  gloves that Defendant did not provide, and that they were forced to pay $10 per week or more for
2  their own gloves. (*See id.* ¶ 20).  Plaintiffs argue that all these expenses were incurred primarily
3  for Defendant's benefit, and that Defendant never reimbursed them. (*See id.* ¶ 21).

4  Plaintiffs also allege that Defendant paid them as little as $6.50 per hour, and that the
5  AER has never fallen below $8.36 since February 16, 2006. (*See id.* ¶ 22).  At some times,
6  Defendant paid Plaintiffs at a piece rate rather than an hourly rate, and in addition to not properly
7  counting all pieces (onions) picked, that piece rate often did not equal the AER. (*Id.* ¶ 23).
8  Plaintiffs also argue that they were paid less than the federal and state minimum wages during
9  the first week they worked, because even though they were nominally paid at a rate above the
10 federal and state minimum wages, if one subtracts the expenses Plaintiffs incurred in anticipation
11 of employment from their first week's pay, the resulting wage rate is below the federal and state
12 minimum wages. (*See id.* ¶ 25).  Plaintiffs also allege they were not paid for each hour worked,
13 although they do not plead any facts in support. (*See id.* ¶ 25).

14 Plaintiffs filed the Complaint in this Court on February 16, 2011 and filed the First
15 Amended Complaint ("FAC") on March 7, 2011.  Defendant moved to dismiss on April 13,
16 2011, which motion was timely due to a stipulated extension to respond.  The parties stipulated
17 that Plaintiffs could respond to the motion to dismiss through May 16, 2011, and on that date
18 Plaintiffs filed both their response and the present motion for leave to amend the FAC to address
19 concerns in the motion to dismiss.  The SAC lists four claims: (1) Minimum Wage Violations
20 Under § 206(a) of the Fair Labor Standards Act ("FLSA"); (2) Breach of Contract (the
21 DOLCOs); (3) State Wage and Hour Law Violations Under Nevada Revised Statutes ("NRS")
22 Sections 608.040, 608.050, 608.140, 608.250, and 608.260; and (4) Minimum Wage Violations
23 Under Article 15, Section 16 of the Nevada Constitution ("Section 16").  The first claim is
24 brought as a collective action under FLSA, and the second through fourth claims are brought as
25

class actions under Rule 23(b)(2) and (3). (*See id.* ¶¶ 27–28).[2] In the interest of efficiency, the Court will grant the motion for leave to amend and will examine the motion to dismiss as against the SAC. Finally, Defendant has moved for a protective order to stay discovery until the present motion to dismiss is determined. That motion is denied as moot.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action

---

[2]The Court will not at this time consider whether the Rule 23 claims are preempted by the FLSA collective action claim. *See Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760–62 (9th Cir. 2010) (holding that the FLSA's § 16(b) opt-in provision did not prevent supplemental jurisdiction over a predominating Rule 23 class action pursuant to California labor laws, but that supplemental jurisdiction was within the district court's discretion). The Court notes, however, that under Rule 23(a)(4) Plaintiffs will have a difficult time showing adequate representation of potentially thousands of foreign migrant workers under an opt-out procedure.

1  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
2  is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,
3  550 U.S. at 555).

4  "Generally, a district court may not consider any material beyond the pleadings in ruling
5  on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the
6  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner
7  & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents
8  whose contents are alleged in a complaint and whose authenticity no party questions, but which
9  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
10 motion to dismiss" without converting the motion to dismiss into a motion for summary
11 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule
12 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay
13 Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court
14 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
15 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th
16 Cir. 2001).

17 **III.   ANALYSIS**

18 Defendant argues that both the federal and state wage claims are barred by the applicable
19 statutes of limitations. *See* 29 U.S.C. § 255(a); Nev. Rev. Stat. § 608.260. The two-year federal
20 statute of limitations bars only those claims that accrued before February 16, 2009. The state
21 also has a two-year statute of limitations, and Section 16 is silent on the limitation period for
22 minimum wage actions, so the Court will not imply a repeal of section 608.260's two-year
23 limitation period. *See Washington v. State*, 30 P.3d 1134, 1137 (Nev. 2001). The Court will
24 therefore dismiss all federal and state wage claims accruing before February 16, 2009, without
25 leave to amend.

### A. Minimum Wage Violations Under § 206(a) of the FLSA

Plaintiffs do not properly allege a traditional failure to pay the federal minimum wage. They allege they were paid as little as $6.50 per hour. But they allege they began working for Defendant in February 2005, and the federal minimum wage has variously been $5.15, $5.85, $6.55, and $7.25 over this time period. The allegations are therefore consistent with liability for failing to pay the nominal minimum wage, but they do not make liability plausible.

Still, there is another theory of liability available. Specifically, Plaintiffs' federal and state minimum wage claims appear to rely on the theory that although Defendant paid Plaintiffs at or above the nominal federal and state minimum wages, when improperly unreimbursed job-related expenses are deducted, the effective wages paid were below the federal or state minimum wages. The Ninth Circuit has recognized with approval the Department of Labor's interpretation of the FLSA to prevent what it characterizes as "kick-backs" that effectively reduce a wage below the minimum wage:

> Whether in cash or other facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash.

*See Gordon v. City of Oakland*, 627 F.3d 1092, 1095 (9th Cir. 2010) (quoting 29 C.F.R. § 531.35). In *Gordon*, the court rejected the kick-back claim because the employee's reimbursement to the employer for training costs was analogous to an unpaid loan where the employee failed to complete an agreed term of service. *See id.* at 1095–96 (citing *Heder v. City of Two Rivers, Wis.*, 295 F.3d 777 (7th Cir. 2002)). Here, there is no indication that Plaintiffs failed to complete their required terms of service such that failure to make certain reimbursements would be proper. Rather, the allegation is that the employees "kicked back" the value of the transportation costs, work gloves, and other fees that the employer was required by

law to provide. Because Defendant was required by law to pay for these expenses but required Plaintiffs to pay for them, Defendant received a benefit from Plaintiffs potentially resulting in an illegally low wage rate.

Defendant correctly responds, however, that the applicable H-2A regulations only require payment of reasonable inbound travel and subsistence expenses, not any immigration expenses, and that the expenses need not be paid until 50% of the contract period is over. *See* 20 C.F.R. § 655.122(h)(1). Defendant notes that Plaintiffs have not alleged that Defendant failed to reimburse the workers for their inbound travel and subsistence, but have simply argued that because the expenses were not paid immediately upon arrival (which the regulation does not require) the first week was effectively worked at below the minimum wage. The Court rejects this argument. The "kick-back" theory is valid, but to properly invoke it in the present case Plaintiffs would have to allege that after 50% of the work contract period was finished, Defendant had still not paid reimbursable expenses, and that when those expenses were deducted from the wages paid theretofore, the effective wage rate for the first half of the work contract period was below the minimum wage. Plaintiffs have not pled such facts. The Court will therefore dismiss this claim, with leave to amend.

Plaintiffs argue that under *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228 (11th Cir. 2002), the kick-back theory is properly invoked whenever an employer fails to make the reimbursements during the first week of work. *See id.* at 1237 (citing 29 C.F.R. § 531.35). The Court respectfully disagrees with this interpretation of the regulations. Section 531.35 applies to workers generally, but it is a well accepted principle of statutory construction that "the specific controls the general," *see, e.g.*, *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 170 (2007), and the regulations applicable specifically to H-2A guest workers require reimbursement only within the first half of the contract period, *see* 20 C.F.R. § 655.122(h)(1). Although the *Arriaga* court correctly noted that employers must comply with cumulative employment

regulations that do not directly conflict, *see id.* at 1235 (citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 519 (1950)), this does not mean that the requirements of 655.122(h)(1) are incorporated into section 531.35's definition of kick-backs. Section 655.122(h)(1) specifically gives employers of H-2A workers half of the contract period to make the inbound travel and subsistence reimbursements it requires. Only kick-backs as defined under section 531.35 that are incurred before or during the first week of work are counted against the first week's pay for the purposes of a minimum wage claim. The failure to reimburse inbound travel and subsistence during the first week is simply not a "kick-back" under section 531.35, because under section 655.122(h)(1) no reimbursement is due at that stage for H-2A workers, and section 531.35 does not itself include such requirements under its definition of kick-backs. It makes little sense to treat as a kick-back the failure to pay a reimbursement that is not yet due.

Section 531.35 does not itself treat as a kick-back the failure to make reimbursement for inbound travel and subsistence, but only for the self-provision of "tools of the trade" by the employee and other such direct benefits to the employer. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 400–01 (5th Cir. 2010) (en banc). Although *Castellanos-Contreras* concerned H-2B workers, for whom inbound transportation and subsistence is not specifically required, the Fifth Circuit found that section 531.35 did not itself require these kinds of reimbursements because inbound travel and subsistence are simply not "tools of the trade" that primarily benefit the employer. Plaintiffs do more than read sections 531.35 and 655.122(h)(1) as cumulative requirements; they attempt to read section 531.35 as *incorporating* the travel and subsistence reimbursement requirements of section 655.122(h)(1) into section 531.35's definition of kick-backs. Although such a result is a theoretical possibility, the argument must rely on more than the basic doctrine of cumulative requirements. It must rely either on a statutory interpretation that the travel and subsistence here falls under section 531.35's definition of a kick-back (in which case there is no need to invoke section 655.122(h)(1) at all), or it must

1  rely on a statutory construction under which section 655.122(h)(1) is incorporated by section
2  531.35.  Section 531.35 incorporates section 531.32(c), which in turn incorporates 29 C.F.R. §
3  778.217.  *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010).  But travel
4  expenses under section 778.217(b)(3) and (b)(5) include only travel expenses incurred "over the
5  road" *while* working for the employer, as well as the expenses incurred when an employer
6  reassigns a worker to a new town after work has begun in another town.  The travel expenses
7  incurred for a worker to move to a town to begin work in the first instance, as here, are not
8  covered.  Therefore, the failure to pay the kinds of expenses at issue here are simply not "kick-
9  backs" under section 531.35 itself.  For example, an employer is not generally expected to pay
10 inbound travel costs for a construction worker to get from Ohio to Nevada to work on a project.
11 If a worker from Ohio desires to work in Nevada, he has to pay his own way to the state, and any
12 reimbursement for that travel would be a gratuity.  And section 531.35 does not otherwise
13 incorporate 655.122(h)(1), directly or indirectly.
14        The Court believes the Eleventh Circuit incorrectly applied the doctrine of cumulative
15 requirements not simply to pile requirements atop one another, but rather to incorporate
16 provisions of one requirement into those of another in a way that the doctrine does not require
17 and that ordinary principles of statutory construction and interpretation do not support under
18 these circumstances. *See Arriaga*, 305 F.3d at 1235–36 ("If the FLSA mandates that employers
19 reimburse certain expenses at an earlier time than the H-2A regulations, requiring employers to
20 do so would satisfy both statutes.").  The above-quoted statement assumes something that the
21 *Arriaga* court failed to examine, i.e., that inbound travel and subsistence falls under section
22 531.35's definition of kick-backs directly, or that section 531.35 directly or indirectly
23 incorporates section 655.122(h)(1).  The only court of appeals actually to address the first
24 question has answered "no," *see Castellanos-Contreras*, 622 F.3d at 400–01, and is it clear that
25 section 531.35 does not directly or indirectly incorporate section 655.122(h)(1).

**B.     Breach of Contract**

The terms of DOLCO may be privately enforced by employees against employers who agree to them. *See Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265, 1268 (D.C. Cir. 1992). Under this claim, Plaintiffs mainly reiterate the wage claims. It is possible that Defendant breached specific terms of the DOLCO, but Plaintiffs must pled such facts. Defendant argues that the DOLCO in this case do not contemplate reimbursement for travel during the first week of employment, but only within the first half of the contract period, as required under the CFR. Defendant also argues that the DOLCO do not require any reimbursement for outbound travel at all. However, even after amendment, these determinations will require an examination of the DOLCO themselves. The Court will therefore dismiss the breach of contract claim, with leave to amend to plead specific breaches of the DOLCO.

**C.     State Wage and Hour Law Violations Under Section 16 of Article 15 of the Nevada Constitution and NRS Sections 608.040, 608.050, 608.140, 608.250, and 608.260**

First, section 608.040 provides "waiting penalties" for employers who fail to pay all wages due to employees who resign, quit, or are discharged. Assuming for the sake of argument that this statute applies to employees who leave a job amicably, the remedy should be available in this case if Plaintiffs can show they were owed wages they were never paid.

Second, section 608.050 appears to provide a similar, and perhaps redundant, remedy to employees who are involuntarily discharged.

Third, section 608.140 provides for reasonable attorney's fees for a successful wage plaintiff where the plaintiff makes a written demand to the employer for an amount not exceeding the amount awarded by the court at least five days before filing suit. Plaintiffs make no allegation that they made such demands, and the Court will therefore dismiss the section 608.140 claim, with leave to amend.

Fourth, section 608.250 empowers the Labor Commissioner to set a minimum hourly

1 wage. Nevada's current minimum wage is $8.25. The Nevada Administrative Code notes that
2 the minimum wage is $6.15 per hour, *see* Nev. Admin. Code § 608.100(1)(b),[3] but notes that the
3 Labor Commissioner may increase the rates for inflation in accordance with Section 16 of
4 Article 15 of the Nevada Constitution, *see id.* at § 608.100(2). Section 16 provides for $6.15 per
5 hour and notes:

> These rates of wages shall be adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin.

Nev. Const. art. 15, § 16(A). In other words, the NAC simply implements Section 16. The Section 16 claim is therefore redundant with (or supersedes) the section 608.250 claim. An aggrieved employee may bring a private action under Section 16 for back pay, damages, reinstatement, injunctive relief, and other legal and equitable remedies and may be awarded reasonable attorney's fees and costs if successful. *See id.* § 16(B). As with the federal minimum wage claims, Plaintiffs do not clearly allege that they were ever paid nominally at a rate below the state minimum wage. However, they appear to allege the same "kick-back" theory under state law. The Nevada Supreme Court does not appear to have considered the kick-back theory, but the Court believes that it would adopt it. The federal and state minimum wage laws exist for the same purpose: to ensure a minimum compensation for each hour worked. When an

---

[3]Assuming Plaintiffs were not offered qualified health insurance.

1  employee is required to provide a benefit to an employer as a condition of employment, the

2  hourly compensation is effectively reduced.  Still, the Court will dismiss, with leave to amend,

3  for the same reason it dismisses the federal wage claims with leave to amend: Plaintiffs have

4  simply not pled facts making a minimum wage violation plausible.

5        Finally, section 608.260 provides for a civil action.  This section has become redundant

6  with (or has been superseded by) Section 16.

## CONCLUSION

8        IT IS HEREBY ORDERED that the Motion for Leave to File Second Amended

9  Complaint (ECF No. 34) is GRANTED.

10        IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 27) is GRANTED as

11  against the Second Amended Complaint, with leave to amend as to the breach of contract claims

12  generally and as to the federal and state wage claims insofar as the latter arose on or after

13  February 16, 2009.

14        IT IS FURTHER ORDERED that the Motion for Protective Order (ECF No. 36) is

15  DENIED.

16        IT IS SO ORDERED.

17  Dated this 26th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge