1  JAMES E. WHITMIRE, ESQ.
   Nevada Bar No. 6533
2  jwhitmire@santoronevada.com
   SANTORO WHITMIRE
3  10100 W. Charleston Blvd., Suite 250
   Las Vegas, Nevada 89135
4  Telephone:    702/948-8771
   Facsimile:    702/948-8773
5  *Attorney for Defendant Peri & Sons Farms, Inc.*

6              **UNITED STATES DISTRICT COURT**

7                  **DISTRICT OF NEVADA**

8  VICTOR RIVERA RIVERA; ERNESTO              Case No.: 3:11-CV-00118-RCJ-VPC
   SEBASTIAN CASTILLO RIOS; VICENTE
9  CORNEJO LUGO; JESUS GARCIA MATA; LUIS
   ANGEL GARCIA MATA GAUDENCIO GARCIA
10 RIOS; SIMON GARCIA RIOS; VICENTE
   CORNEJO CRUZ; EMILIO MONTOYA MORALES;
11 JORGE LUIS AGUILAR SOLANO; DOMINGO
   RAMOS RIOS; ARTEMIO RINCON CRUZ;
12 SERGIO RIOS RAMOS; PEDRO RIVERA
   CAMACHO; GERARDO RIOS RAMOS; REGULO
13 RINCON CRUZ; AURELIANO MONTES MONTES;
   MANUEL RIVERA RIVERA; JOSE BALDERAS
14 GUERRERO; VIRGILIO MARQUEZ LARA;
   MARTIN FLORES BRAVO, individually and on
15 behalf of all other persons similarly situated,
16
17                Plaintiffs,
18
       v.
19
   PERI & SONS FARMS, INC.,
20
                Defendant
21

22     **DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
23    FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE
      ACTION SETTLEMENT [ECF NO. 160] AND MOTION TO TEMPORARILY
24    VACATE ORDER GRANTING PRELMINARY APPROVAL [ECF NO. 163]**[1]

25 _____
   [1]   The Response is timely filed pursuant ECF No. 160, which states that "[r]esponses [to
26 Plaintiffs' Motion for Preliminary Approval are] due by 3/30/2015."   As noted herein, the
   Motion previously filed as ECF No. 160 was not a Joint Motion due to a disagreement between
27 the parties as to 1-2 items relating to the parties' settlement (which are discussed herein).
   Accordingly, Defendant respectfully requests that the Order preliminarily approving the
28 settlement that was issued on 3/25/2015 (ECF No. 163) be vacated until such time as this

*[sidebar]* SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

PERI & SONS FARMS, INC. ("Defendant" or "Peri & Sons"), by and through its counsel of record, hereby files Defendant's Response to Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement [ECF No. 160] and Motion to Temporarily Vacate Order Granting Preliminary Approval [ECF No. 163].

1.    Peri & Son's agrees that the parties have reached a settlement that should be approved by the Court.[2]

2.    Peri and Son's is filing a response to the Motion as opposed to jointly filing a motion for two basic reasons. First, Peri & Son's (which is settling this matter without any admission of wrongdoing) cannot adopt certain factual assertions made in the Motion.[3] Second, Peri & Sons does not consent to a fee award in excess of $800,000.

3.    Rather than seeking approval for a fee award ranging from $700,000-$800,000, Plaintiffs' counsel is, in reality, seeking the approval of $1,113,855 of fees ($413,855.50 paid by

_____ (continued)
Response is considered. In addition, the time tables set for in ECF No. 163 are inconsistent with certain milestone deadlines that are more fully discussed in Plaintiffs' Memorandum of Points and Authorities [ECF No. 161] in support of the motion for preliminary approval.

[2] Peri & Sons concurs, for example, that a settlement was reached; that the settlement was non-collusive and the by-product of arms' length negotiations; that the parties disputed the strength of plaintiffs' claims and whether the claims were suitable for class/collective action treatment; that further litigation would be extensive and complex and would cause the parties to incur significant risks and expenses; that the amount offered will fairly and adequately compensate class members; that this is "an eminently reasonable settlement;" and, that certification of the settlement class is appropriate.

[3] For example, Plaintiffs' Motion states that a certification application "constituted an employment contract" at page 2 of the Motion. At page 3 of the Motion, Plaintiffs state that workers "incurred significant out-of-pocket expenses to get from their homes in Mexico to a United States consulate in Sonora, Mexico." Other similar statements are contained within the Motion. Peri & Sons is attempting to avoid a painstaking drafting exercise to identify and edit every statement of concern in Plaintiffs' Motion. In addition, Peri & Sons is attempting to avoid nitpicky editing exercises that could give rise to unnecessary disputes between the parties, who are jointly attempting to have the Court approve the settlement. Accordingly, this short response is being filed to make it clear that Per & Sons is not adopting various assertions contained within Plaintiffs' Motion.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

the Government of Mexico to initiate this litigation, plus an additional $700,000).[4]

4.      An impasse exists as to whether: (a) Plaintiffs' counsel should be entitled to the $313,855 in excess of $800,000 that Peri & Sons upon (i.e. $1,113,855 total requested minus $800,000), or (b) whether the settlement class should be entitled to the $313,855 (which would flow to the class if Plaintiffs' counsel is paid $800,000 minus the $413,855 already paid by the Mexican Government).

5.      Given the impasse, a ruling from the Court is sought concerning the issue, which may also affect the notice to be sent to the class. Peri & Sons offers the following for the Court's consideration:[5]

  a. The $413,855 paid by the Government of Mexico to Plaintiffs' counsel to initiate this litigation was never disclosed to Peri & Sons until a few days after the parties signed the formal settlement agreement attached to Plaintiffs' Motion as Ex. 1.[6]

  b. Peri & Sons negotiated heavily to allocate money to the workers, while also providing Plaintiffs' counsel reasonable attorneys' fees in the amount that was negotiated for at the mediation before Gregory Lindstrom. During the mediation, Plaintiffs' counsel lowered their fee request down to $800,000.

  c. As Plaintiffs' counsel noted, at footnote 6 of the draft motion for preliminary approval that they prepared, Peri & Sons only agreed to an attorneys' fees and costs up to $800,000. More particularly, footnote 6

---

[4] The proposed notice to the class is now incorrect in that it makes no mention whatsoever that Plaintiffs' counsel is actually seeking the approval of $1,113,955 of fees.

[5] The undersigned is making the following representations as an officer of the Court. To the extent that a Declaration and/or supporting e-mails, etc. are necessary, Peri & Sons will supplement the record. At this point, Peri & Sons is attempting to avoid escalation of this matter, and is attempting to seek the Court's guidance on a relatively discreet issue.

[6] Prior to signing the formal settlement agreement, Peri & Sons had no idea that a separate payment had been made to Plaintiffs' counsel.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

states, "Pursuant to the terms of the Settlement, Peri has agreed that Class Counsel may seek an award of attorneys' fees and costs up to $800,000." See, Ex. A attached.  While Peri & Sons agrees to an aggregate total attorney fee of $800,000, it has never consented to fees above $800,000.

d.  After raising an objection to Plaintiffs' counsel seeking approval of fees above $800,000, Plaintiffs' counsel has since modified the previous footnote 6.  The new footnote in its Motion (footnote 5) adds a phrase (in bold below) and now states, "Peri has agreed that Class Counsel may seek an award of attorneys' fees and costs up to $800,000 *from the Settlement Fund.*"  Mot. at 5.  The phrase "from the Settlement Fund" was added to the Motion that was actually filed as Plaintiffs' counsel: (1) are attempting to distance themselves from the $413,855 side payment previously made by the Mexican Government; and (2) are attempting to paint themselves in a more favorable light by suggesting that they are only seeking $700,000 of fees when, in reality, they are seeking approval for a $1,113,855 fee.[7]

e.  The dispute, which does not impact the enforceability of the settlement, essentially centers on the secret payment made by the Mexican Government.[8]  Plaintiffs' counsel has ardently maintained that they had no duty to disclose the payment because Peri & Sons did not ask an appropriate question at the mediation (i.e. the classic "don't ask, don't tell" philosophy).[9]

---

[7]  If one thought that the $413,855 side payment did not need court approval, the issue would never have seen the light of day in the Motion for Preliminary Approval.

[8]  When Peri & Sons first discovered the issue, Plaintiffs initially refused to disclose the identity of the third-party payor. They ultimately made such disclosure as it would be patently absurd for approval to be sought regarding some side-payment by an anonymous source.

[9]  No matter how careful the undersigned counsel tries to be, it is not foreseeable that the Mexican Government would have made a side-payment to Plaintiffs' counsel such that a question would be posed to that effect. It is absurd to reasonably expect Peri & Son's counsel to ask the following question: "Have you guys received any previous payment of fees from the

SANTORO WHITMIRE
10100 W. Charleston Blvd, Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

f.   Defendants disagree with Plaintiffs' counsel's no duty to speak position when one considers that the mediation term sheet that the parties signed at the conclusion of the two-day mediation in California in December, 2014 was designed to layout the framework for a settlement that would be presented to the Court for approval.

g.   Given the Court's involvement in the process (which is required by law), it is and was to be expected that all of the "cards be placed on the table," and that there be full disclosure given that the parties were in a joint effort to create a framework for settlement approval. The $413,855 was *never* discussed once at the mediation, Peri & Sons disagrees with the "don't ask don't tell" position taken by Plaintiffs' counsel, and Peri & Sons deems the whole issue to be a sharp litigation practice.

h.   Peri & Sons respectfully disagrees with the characterization of Plaintiffs' counsel's math computations. For example, the suggestion that only 25% is being paid in fees is, at best, misleading as that figure ignores the $413,855 side-payment from the Mexican Government. Peri & Sons offers the following alternative math computations for the Court's consideration:

   i.   When one divides $1,113,855 (the actual fee award sought by Plaintiffs'' counsel) by $2,800,000, the resulting percentage is 39.78%.[10]

---
(continued)

Mexican Government in order to initiate and/or otherwise maintain this suit?" To even ask that question, one would likely have to have inside information and/or be extra-ordinarily paranoid. Most people would look at the questioner as though they were crazy for even asking the question. In sum, Peri & Sons' counsel were not paranoid and/or otherwise reasonably expecting that when negotiating fees downward throughout the course of the two-day mediation that Plaintiffs' counsel had already been secretly paid $413,855 by the Mexican Government.

[10] This computation includes the $413,855 in the fee award, but is not added to the $2,800,000 to be paid by Peri & Sons.

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

ii.   When one divides $800,000 (the amount agreed to by Peri) by $2,800,000, the resulting percentage is 28.57%. This is what was contemplated at the mediation. Since $413,855 has already been paid, the amount available to the class for distribution should now increase by approximately $313,955 ($800,000 minus $413,855).

iii.   Plaintiffs' attempt to construct an alternate fee award calculation at footnote 16 of the Motion. More specifically, Plaintiffs' counsel divides $1,113,855 by $3.2 million, which results in a 34.7% fee award out of the settlement. A problem with this calculation is that is highly debatable that there is $400,000 added to the common fund by virtue of the side-payment, and it is questionable that one can say that the side-payment by the Mexican Government was creating a common fund when the monies went to Plaintiffs' counsel, presumably risk free at an early juncture in the case. Moreover, it was never contemplated at the mediation that the fee award would be 34.7% and/or $1,113,855.

iv.   One final computation could be made. If one uses 28.57% ($800K/$2.8million – the number actually contemplated at the mediation) times a supposed $3.2 million fund, the fee award would be $914,240 (instead of the $1,113,855 actually being requested). Given that $413,855 has been paid, the net amount to Plaintiffs' counsel would be $500,000 (as opposed to the $700,000 that is being sought now). Under this scenario, Plaintiffs' counsel would receive $114,240 more than Peri & Sons agreed to, while

- 6 -

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

allowing the class to recover approximately $200,000 more (as a result of $500,000 being paid from the $2.8 million as opposed to $700,000 being paid from the $2.8 million). This is Peri & Sons fall-back position,[11] which is more than reasonable, and which would still reward Plaintiffs' counsel for the "don't ask don't tell" philosophy.

6.      While Peri & Sons recognizes that the Court may disagree with its position, it believes, in good faith, that this is an issue that needs to be disclosed especially when Peri & Sons was negotiating hard to allocate settlement amounts into the worker's allocation as compared to fees (while still providing for a reasonable attorney fee recovery).[12]

7.      Ultimately, the issue is who will benefit by the $313,855 difference between $800,000 and $1,113,855 (e.g. the workers or Plaintiffs' Counsel).

8.      As noted above, there is now an issue concerning the form of notice to be sent to the proposed class as the current version attached to Plaintiffs' Motion makes no mention of the $413,855 payment by the Government of Mexico. Accordingly, this issue needs to be addressed by the Court before mailing occurs.

---

[11] At the end of the analysis, the bargained for fees agreed to by Peri and Sons were $800,000 (of which $413,855 has already been paid). Peri and Sons simply objects to any amount above that threshold. Reluctantly, Peri & Sons is also articulating an alternative methodology as a means of trying to be ultra-reasonable in this matter.

[12] Peri & Sons knew that Plaintiffs' counsel would seek a fee award and understood that an amount would need to be paid. After negotiations, $800,000 (as noted by Plaintiffs' in their previous footnote 6) was an amount that Peri & Sons could agree upon.

1    In sum, the settlement should be ultimately be approved, with the attorney fee issue being

2    addressed by the Court before notice is actually distributed.

3    Dated this 25th day of March, 2015.

4                                        SANTORO WHITMIRE

5                                        /s/ James E. Whitmire, Esq.
                                         JAMES E. WHITMIRE, ESQ.
6                                        Nevada Bar No, 6533
7                                        10100 W. Charleston Blvd., Suite 250
                                         Las Vegas, Nevada 89135
8                                        Attorneys for Defendant Peri & Sons Farms, Inc.

9

10

11   IT IS HEREBY ORDERED that Defendant's Motion to Vacate (ECF #165) is
     GRANTED and Order (ECF #163) is VACATED.  The Court will consider Defendant's
12   response to Plaintiff's Motion for Preliminary Approval of Class Settlement as well as
     Plaintiff's reply which is due April 6, 2015, before ruling on Plaintiff's Motion for
13   Preliminary Approval of Class Settlement.

14   IT IS FURTHER ORDERED that the final fairness hearing currently set on
15   Monday, July 6, 2015 at 10:00 A.M. is VACATED.

16

17

18   IT IS SO ORDERED this 27th day of March, 2015.

19

20

21   ROBERT C. JONES

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2     I HEREBY CERTIFY that, on the 25th day of March, 2015 and pursuant to Fed. R. Civ.

3   P. 5(b), a true and correct copy of the foregoing **DEFENDANT'S RESPONSE TO**

4   **PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND**

5   **COLLECTIVE ACTION SETTLEMENT [ECF NO. 160] AND MOTION TO**

6   **TEMPORARILY VACATE ORDER GRANTING PRELMINARY APPROVAL [ECF**

7   **NO. 163** was electronically filed with the Clerk of the Court by using ECF service which provide

8   copies to all counsel of record registered to receive ECF notification in this case to wit:

9   Mark R. Thierman, Esq.
    THIERMAN LAW FIRM, PC
10   7285 Lakeside Drive
    Reno, Nevada  89511
11   laborlawyer@pacbell.net

12
    Matthew J. Piers, Esq.
13   mpiers@hsplegal.com
    Jose Jorge Behar
14   jbehar@hsplegal.com
    Christopher J. Wilmes
15   cwilmes@hsplegal.com
    Caryn C. Lederer
16   clederer@hsplegal.com
    HUGHES SOCOL PIERS RESNICK & DYM, LTD.
17   70 West Madison Street, Suite 4000
    Chicago, Illinois  60602
18

19
    *Attorneys for Plaintiff*
20

21

22                                    */s/ James E. Whitmire*
                                    An employee of SANTORO WHITMIRE
23

24

25

26

27

28

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 - fax (702) 948-8773

EXHIBIT "A"

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF A CLASS AND COLLECTIVE ACTION SETTLEMENT

### I.   INTRODUCTION

Plaintiffs Victor Rivera Rivera, Ernesto Sebastian Castillo Rios, Vicente Cornejo Lugo, Jesus Garcia Mata, Luis Angel García Mata, Gaudencio Garcia Rios, Simon Garcia Rios, Vicente Cornejo Cruz, Emilio Montoya Morales, Jorge Luis Aguilar Solano, Domingo Ramos Rios, Artemio Rincon Cruz, Sergio Rios Ramos, Pedro Rivera Camacho, Gerardo Rios Ramos, Regulo Rincon Cruz, Aureliano Montes Montes, Manuel Rivera Rivera, Jose Balderas Guerrero, Virgilio Marquez Lara, Martin Flores Bravo, Ernesto Aguilar Bocanegra, Salvador Isidro Ramirez, and Jose Juan Garcia Mata, (collectively, "Plaintiffs"), by and through their attorneys of record, and Defendant Peri & Sons, Inc. ("Defendant" or "Peri") (collectively, "the Parties") have reached an agreement to settle Plaintiffs' class action lawsuit.

Plaintiffs seek preliminary approval of the parties' Joint Stipulation and Agreement to Settle Class Action Claims ("Settlement Agreement" or "Settlement"), which is attached hereto as Exhibit 1, and respectfully request the Court enter an order, a copy of which is attached hereto as Exhibit 2: (1) granting preliminary approval of the Settlement; (2) provisionally certifying the proposed Settlement Class for settlement purposes only; (3) designating Plaintiffs as Class Representatives and their attorneys as Class Counsel; (4) approving the form and manner of the Class Notice; and (5) setting a date for a final fairness hearing.

### II.   BACKGROUND.

#### A.  Factual Background.

Plaintiffs and putative class members are Mexican migrant agricultural workers who worked at Peri's Yerington, Nevada farm through the federal government's agricultural guest

1

worker visa program (the "H-2A" visa program), to cultivate, harvest and process onions at Peri's farm in Yerington, Nevada between 2005 and 2011.

To employ Plaintiffs and the hundreds of other foreign H-2A workers who worked at Peri each year, Peri applied for and received clearance from the United States Department of Labor ("DOL"). *See* 8 U.S.C. §§1101(a)(15)(H)(ii)(a) & 1188(a)(1). To receive that clearance, Peri filed a temporary labor certification application with DOL. 20 C.F.R. §655.130. By DOL regulation, the certification application, commonly referred to as a "clearance order" or "job order," constituted an employment contract between Peri and all of Peri's H-2A workers. 20 C.F.R. § 655.122(q). Also by DOL regulation, each clearance order contained virtually identical terms establishing the minimum benefits, wages and working conditions that Peri was required to provide to its H-2A workforce. Among other things, the contracts required Peri to pay H-2A workers a specific hourly rate for each hour worked—the "Adverse Effect Wage Rate" ("AEWR")—an hourly rate that DOL establishes each year to ensure that temporary employment of foreign workers will not adversely affect the employment opportunities of domestic workers. *See* 20 C.F.R. §655.122(l).[1]

To work at Peri's farm, Plaintiffs and class members incurred significant out-of-pocket expenses to get from their homes in Mexico to a United States consulate in Sonora, Mexico (where they applied for their H-2A visas). In particular, they paid for the cost of food and lodging while their H-2A visa was processed, an H-2A application fee, the cost of the H-2A visa itself, and a border crossing fee. Some of the workers also allege that they paid Peri foremen a hiring or recruitment fee.

---

[1] The work contracts (and DOL regulations) required Peri to pay H-2A workers the highest of the AEWR, the prevailing hourly wage rate, the prevailing piece rate, the agreed-upon collective bargaining rate, or the Federal or State minimum wage rate, in effect at the time work was performed. During relevant times, the AEWR was the highest wage rate in Nevada for the work performed by H-2A workers.

## B. Procedural History

On February 16, 2011, Plaintiffs filed this lawsuit, on behalf of themselves and others similarly situated. Shortly afterwards, Plaintiffs filed first and second amended complaints.[2] Those complaints alleged that Peri breached Class Members' H-2A employment contracts by failing to pay them the applicable hourly AEWR for every hour worked. *See* SAC ¶¶ 46-49. Plaintiffs further alleged that Peri violated the workers' contracts by not fully paying Class Members' immigration and transportation expenses, by not paying for work gloves, and by violating the prohibition against employees paying recruitment costs. *Id.* ¶¶ 46-49. Plaintiffs also alleged that Peri violated the minimum wage requirements of the Fair Labor Standards Act, Nevada Minimum Wage and Hour Laws, and the Nevada Constitution during Class Members' first weeks of work by failing to reimburse inbound travel and immigration expenses. *See Id.* ¶¶ 41-45, 50-58. Finally, Plaintiffs claimed that Peri's failure to pay Class Members wages due and owing to them under their employment contracts entitled them to penalties pursuant to NRS 608.040 and 608.050. *Id.* ¶¶ 53-54. Peri has disputed Plaintiffs' allegations and contested Plaintiffs' assertion that the case could be certified as a class action under Rule 23. *See, e.g.,* Answer to Second Amended Class Action Complaint (Dkt. No. 108) ("Answer").

Early in the litigation, Peri filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. This Court granted Peri's motion, and Plaintiffs appealed to the Ninth Circuit. While the appeal was pending, Peri reached a settlement with the DOL regarding alleged violations of the H-2A regulations. In that settlement, Peri agreed to pay $2,338,669.60 for alleged violations

---

[2] On October 17, 2014, Plaintiffs sought leave to file their Third Amended Class Action Complaint. *See* Dkt. No. 135. The claims in the proposed Third Amended Complaint are the same as those set forth in plaintiffs' previous complaints, except that in the Third Amended Complaint omits allegations that Peri did not pay Plaintiffs for all onions that they picked during times they were paid by the piece rate and that Peri failed to pay Plaintiffs for all hours worked. *Id.* at 3-4. The current operative complaint is Plaintiffs' Second Class Action Complaint (Dkt. No. 56) ("SAC").

(including failure to pay the AEWR) during the years 2008 and 2009. On November 13, 2013, the Ninth Circuit ruled in Plaintiffs' favor on most claims and reversed and remanded the case. *Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899 (9th Cir. 2013), *cert. denied,* 134 S. Ct. 2819 (2014). Defendant filed a petition for *writ of certiorari* to the United States Supreme Court, Plaintiffs filed a Brief in Opposition, and the Supreme Court denied the petition. After the case was remanded back to the district court, the parties resumed litigation.

### C. Analysis of Peri's Payroll Data.

In November 2014, Peri provided Class Counsel with electronic payroll data for 25% of its H-2A workers in each year from 2005 through 2011. The payroll records showed how much money Peri paid to each worker during each payroll period and, for the most part, showed how many hours the workers worked during each work week. In addition, the records showed how much Peri reimbursed the workers for travel and immigration expenses.

Class Counsel retained an expert data analyst, Whitman Soule, to analyze the electronic payroll data and estimate the unpaid wages owed to Class Members. Mr. Soule began by calculating the wages owed on account of workers being paid below the applicable AEWR rate. This calculation required Mr. Soule to conduct a straightforward comparison between the applicable AEWR and the hourly rate that Class Members were actually paid in each workweek to determine the shortfall. Mr. Soule determined that Peri owed the 25% sample of workers approximately $1.2 million for the AEWR shortfall from 2005-2011 and that it owed approximately $350,000.00 in interest, calculated at the prime rate. Based on Mr. Soule's analysis of the random sample, Class Counsel estimated that the Class Members' breach of contract damages amounted to approximately $6,070,000.00 (including pre-judgment interest),

or approximately $3,740,000 if discounted to reflect money that DOL recovered for Class Members in its settlement with Peri.

Next, Mr. Soule estimated the value of Plaintiffs' unpaid minimum wage claims for the workers included in the 25% sample. For this calculation, Mr. Soule assumed that each H-2A worker incurred $150 in travel and immigration expenses in 2010 and 2011 and $350 in travel and immigration expenses in 2009.[3] Using these assumptions, he estimated that the unpaid minimum wages for the full class totals approximately $445,000 (including interest) for the two-year period before Plaintiffs filed their complaint.

Lastly, Mr. Soule calculated the waiting penalties that Class Members could recover if they prevailed on their claims under NRS 608.040 and 608.050. Those provisions permit a worker to receive thirty-days-worth of wages if his or her employer does not pay all wages owed on a work contract. Mr. Soule calculated the value of thirty-days-worth of wages for each worker in the 25% sample and estimated that the total penalties for the putative class would amount to approximately $6.6 million for the entire Class, assuming a two-year statute of limitations.

Based on these calculations, the parties participated in a two-day mediation on December 9 and 10, 2014 with attorney Greg Lindstrom.[4] At the end of the two-day mediation, the parties reached the Settlement described more fully below.

## III.     SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

---

[3] These estimated, averaged expenses were based on interviews with the named plaintiffs.

[4] Mr. Lindstrom is a well-respected and experienced mediator. From 1978-2008, he was an attorney at Latham & Watkins, spending seven years as the managing partner of the firm's San Francisco office. From 2008-2012, he acted as General Counsel for The Irvine Company, and since 2012, he has worked as a full-time neutral.

The Parties' Settlement provides Class Members a significant monetary recovery, releases only those claims arising from or relating to this action, and sets forth a comprehensive mechanism for providing notice of the Settlement to Class Members.

### A. The Settlement Class and Recovery.

The parties' Settlement creates a $2,800,000 fund (the "Settlement Fund") to compensate Class Members, pay for settlement administration costs, and to pay Plaintiffs' attorneys' fees and litigation expenses.[5] Settlement §§ III(K); IV(A). If the Court approves the Settlement, Class Members who return claim forms will divide $1,925,000; up to $175,000 will be paid to Settlement Administrators Simpluris, Inc. ("Simpluris"), Justicia Cruzando Fronteras, Inc. ("JCF"), and Centro de los Derechos del Migrante, Inc. ("CDM") (collectively, the "Settlement Administrators") who collectively will administer the settlement; and $700,000 will be paid to Class Counsel for attorneys' fees and litigation expenses.[6] *Id.* §§ __. None of the $2.8 million settlement fund will revert to Defendant. Any unclaimed settlement funds will be donated to the non-profit organization National Center for Farmworker Health, as Cy Pres. *Id.* § IV(E)(2) and IV(K)(3).

### B. Calculation of Class Members' Individual Payments.

Peri has provided Class Counsel electronic payroll records for all Class Members. *Id.* § IV(G)(1). Using those records, Class Counsel has calculated each Class Member's individual share of the $1,925,000 fund allocated to Class Members by: (1) determining each Class Member's AEWR shortfall during each workweek in 2005-2007 and 2010-2011; (2) determining each Class Member's minimum wage shortfall in the years 2009-2011, using the amount of $350

---

[5] The Class is defined as "All H-2A workers whom Defendant Peri & Sons employed between February 16, 2005 and December 31, 2011." Settlement § IV(H)(2).

[6] Pursuant to the terms of the Settlement, Peri has agreed that Class Counsel may seek an award of attorneys' fees and costs up to $800,000. Class Counsel is requesting $700,000.

for inbound travel and immigration expenses in 2009 and $150 for inbound travel and immigration expenses in 2010 and 2011; and (3) calculating prejudgment interest on all damages amounts at the prime rate. *Id.* § IV(E)(1).[7] In the event that the settlement amounts claimed by Class Members who return Claim Forms exceed $1,925,000, then each Class Member's settlement award shall be reduced proportionately so that the total amount of all settlement awards to Class Members equals $1,925,000 *Id.* § IV(E)(2). If the settlement amounts claimed by Class Members who return Claim Forms is less than $1,925,000, then each Class Member's settlement award shall be increased proportionately so that the total amount of all settlement awards to Class Members equals $1,925,000.00. *Id.*[8]

This monetary amount represents a significant recovery on behalf of the Class. If __% of Class Members claim their settlement share, then participating Class Members will recover approximately all of the wages that Peri allegedly owes them. If __% of Class Members return a Claim Form, then participating Class Members will recover approximately __% of their total alleged unpaid wages. Even in the unlikely event that *all* Class Members return Claim Forms, Class Members will receive __% of their total alleged unpaid wages.

### C. Settlement Administration and Notice Procedures.

A critical aspect of the Settlement is its comprehensive and carefully crafted notice and administration procedure. Class Members are Mexican migrant workers, many of whom live in rural areas, where mail is not reliable. Indeed, mail is not reliable as a general matter in Mexico.

---

[7] Because Peri's settlement with DOL pays Class Members for any unpaid AEWR wages owed in the years 2008 and 2009, the Settlement does not pay Class Members any additional money for unpaid AEWR during these two years.

[8] No Class Member will receive more than two times of their individual share of the Settlement Fund. If money remains in the Settlement Fund after each participating Class Member is paid two times their full share of the Settlement Fund, then such remaining money shall revert to National Center for Farmworker Health. *Id.* § IV(E)(2).

Class Members also have a limited ability to cash U.S. checks without incurring large fees. In other words, a traditional notice plan and settlement distribution would not adequately serve the needs of the Class.

As a result, the Parties have selected CDM, JCF, and Simpluris—all experienced class action settlement administrators to collectively provide notice to Class Members and administer the settlement. All three entities have experience administering class action wage and hour settlements involving Mexican workers, and each will perform a distinct function for which they are well suited. This comprehensive notice procedure will ensure that as many Class Members as possible receive notice of the Settlement and evaluate whether to claim their settlement funds.

Within seven days of the entry of the order granting preliminary approval of the Settlement ("Preliminary Approval"), Peri will provide Class Counsel and the Settlement Administrators with contact information and additional identifying information for each of the Class Members and also will provide Simpluris with a list of all Class Members who are scheduled to work for Peri in 2015.  Settlement § IV(G)(2). Then, notice will be distributed by the following methods:

- Mailing to Class Members in Mexico. CDM will verify and update the Class Member addresses provided by Peri and then thirty days after preliminary approval will mail each Class Member a Spanish-language copy of the Summary Notice and Claim Form, via Correos de México (the Mexican postal service), with a postage-prepaid envelope addressed to CDM for the return of the Claim Form. *Id.* § IV(H)(3).

- Posting and Distribution to H-2A Workers at Peri's Farm. Peri will post a Summary Notice and Claim Form in its H-2A worker housing units at its farm. In addition, Simpluris will provide Peri with notice packets (with return envelope postage prepaid), using the Spanish-language Summary Notice and Claim Form, for each Class Member employed in 2015, and Peri will distribute those notice packets with the Class Members' next scheduled paycheck. *Id.*

- In-Person Outreach in Mexico. No later than thirty days after Preliminary Approval, JCF will make efforts to contact as many Class Members as possible, via in-person

outreach, and deliver the Spanish-language Summary Notice and Claim Form. In its discretion, JCF will make phone calls to Class Members and place radio advertisements or similar communications in areas where Class Members reside to notify them of in-person meetings. JCF also will collect Claim Forms signed by Class Members. *Id.*

Class Members will have the option of submitting Claim Forms via U.S. mail (postage prepaid) to Simpluris, via the Mexican postal service (postage prepaid) to CDM, directly to a JCF messenger, or by fax or email to _____. *Id.* §§ IV(H)(3). All Claim Forms must be submitted to one of the Settlement Administrators within 180 days of the date that CDM mails the Summary Notice and Claim Form (which will be thirty days after Preliminary Approval). *Id.* § __.

### D. Exclusion from and Objecting to the Settlement.

Class Members will have 180 days to request exclusion from the Settlement. *Id.* § IV(D) and (I)(2). They may object to the Settlement any time before the Court grants final approval. *Id.* § IV(D) and (I)(1). If thirty-five (35) or more Class Members opt out of the Settlement, then Peri has the right to revoke and terminate the Settlement. *Id.* § IV(I)(3).

### E. The Release.

The Settlement provides that Class Members who do not file valid requests for exclusion will release all claims arising from or relating to the allegations in this lawsuit. *Id.* § IV(B).

### F. Distribution of Settlement Awards.

In a wage and hour case involving Mexican farmworkers, the method of distributing Settlement Funds is important because it is difficult for people in Mexico to cash checks drawn on United States banks. The Settlement addresses this issue by selecting a settlement administrator, CDM, with a great deal of experience distributing settlement funds to Mexican farmworkers. Importantly, CDM has an arrangement with Bansefi (a bank operated by the Mexican federal government and designed to offer financial services to low-income individuals),

that allows claimants in Mexico to receive their full settlement payments at any Bansefi branch location, with no more than $10 (USD) in service fees deducted from their awards.[9] *See Id.* § IV(K).

Once the Court finally approves the Settlement, CDM will call claimants by telephone to provide them with a Personal Identification Number ("PIN") to claim their settlement payment at a local Bansefi branch. *Id.* CDM only will provide the PIN after confirming a claimant's identity, using the Clave Unica de Registro de Población, or "CURP" (a unique code found on the Mexican voter registration card) listed on the claimant's Claim Form. *Id.*

Claimants will have 180 days after the Effective Date of the Settlement Agreement to collect their settlement award. *Id.* 210 days after the Effective Date of the Settlement Agreement, any unclaimed settlement funds will revert to the National Center for Farmworker Health. *Id.*

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT.

The law strongly favors settlements, particularly where complex class action litigation is concerned. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement of a class action, however, is subject to the court's approval. Fed. R. Civ. P. 23(e). Similarly, FLSA class action claims may be settled under the supervision of DOL or with court approval. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the

---

[9] This amount is far less than the fees typically charged by commercial money transfer services for amounts comparable to claimants' settlement awards, and using Bansefi also avoids the cumbersome procedures of such services in the United States. For example, Western Union has a transaction cap for transfers to Mexico that would impede the timely receipt of settlement awards to Class Members. Additionally, a $1,000 settlement award sent to Mexico via Western Union could cost as much as $50.00, once service fees and Western Union's exchange rate are taken into account.

certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Court approval of a class action settlement follows a three-step procedure: "(1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed . . . or published notice of the settlement to all affected class members; and (3) a 'formal fairness hearing' or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented." *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-01508-JCM, 2012 WL 3277278, at *3 (D. Nev. July 18, 2012), *report and recommendation adopted*, No. 2:10-CV-1508 JCM VCF, 2012 WL 3277276 (D. Nev. Aug. 9, 2012) (quoting Manual for Complex Litigation (Fourth) § 21.632 (2008)).

The first hearing merely requires the district court to make a "preliminary fairness review," *id.* at § 21.633, and confirm that a class exists for purposes of settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (citations omitted). Because "full" fairness cannot be assessed until a court conducts the final approval hearing, preliminary approval of a class settlement is appropriate if: "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with[in] the range of possible approval." *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (citations omitted). *See also, e.g., Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014) (recognizing standard); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting Manual for Complex Litigation (Second) § 30.44 (1985) and Newberg on Class Actions § 11.25 (1992)) (same). *See also Hanlon*, 150 F.3d at 1027

("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

In addition, when determining whether a class settlement ultimately is fair—at the final settlement approval hearing—courts examine the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See City of Seattle*, 955 F.2d at 1291; *Hanlon*, 150 F.3d at 1026. "Courts have, at times, engaged in a 'preliminary evaluation' of these factors to determine whether a settlement is fair, adequate, and reasonable." *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2014 WL 1366550, at *3 (D. Nev. Apr. 7, 2014).

Here, consideration of all of the above factors demonstrate that the parties' settlement should be preliminarily approved.

## A. The Settlement Was the Result of Non-Collusive, Arm's Length, Informed Negotiations.

The parties settled this case after almost four years of litigation, and only after extensive, arms-length negotiations that occurred during a two-day mediation under the supervision of an experienced mediator. Behar Decl.¶ __. By the time of the mediation, Class Counsel had thoroughly researched the applicable law and diligently investigated the facts. They had briefed a motion to dismiss in this Court, and then briefed the issues again in the Ninth Circuit Court of Appeals and the United States Supreme Court; Class Counsel also reviewed records underlying the Department of Labor's investigation into Peri's H-2A employment practices and interviewed

12

class members. *See e.g.,* Plaintiffs' Motion for Conditional Certification and Authorization of Court-Approved Notice (Dkt. No. 100); Behar Decl.¶ __. Moreover, prior to the parties' mediation, Class Counsel analyzed detailed payroll data for 25% of the class. Behar Decl.¶ __. This investigation provided Class Counsel a more than adequate basis to reach an informed compromise.

Accordingly, the process by which the parties reached the settlement weighs in favor of preliminary approval. *See Nen Thio*, 14 F. Supp. 3d at 1334 (settlement reached with assistance of experienced class action mediator after review of payroll data weighed in favor of preliminary approval); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement reached with assistance of experienced mediator after review of data demonstrates lack of collusion).[10]

### B. The Settlement Provides Reasonable, Fair, and Adequate Relief to Class Members In Light of the Significant Litigation Risks.

A review of the relevant *City of Seattle* factors demonstrates that the Settlement has no obvious deficiencies, does not grant preferential treatment to class representatives or segments of

---

[10] The Settlement also lacks other "subtle signs" of collusion that warrant caution. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). As discussed below, the amount allocated for attorneys' fees and costs, $700,000 (or 25% of the settlement fund) falls squarely in the range the Ninth Circuit has determined reasonable and thus does not constitute a "disproportionate distribution." To the extent the Court does not award the requested fees, the remaining amount will be distributed to Class Members; no funds will revert to Peri. And while Peri has agreed not to oppose Class Counsel's fee request, this is not problematic because fees will be paid from the settlement fund and Counsel's fee request is reasonable and proportionate to the total settlement fund. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) (agreement not to oppose fees does not signal collusion when fees will be paid from settlement fund); *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-CV-01303-KJM, 2014 WL 7273642, at *9 (E.D. Cal. Dec. 17, 2014) (same); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d at 948-49 (recognizing "clear sailing" provisions are not prohibited but require court to be "careful to avoid awarding 'unreasonably high' fees simply because they are uncontested"); Settlement § IV(F)(1) (regarding fees and costs). *See also* Section IV(B)(3)(c) *infra* (discussing reasonableness of requested attorneys' fees).

the class, and overall is reasonable, fair, and adequate in light of the significant litigation risks in this case. As a result, the Settlement falls well within the range of possible approval.

### 1. The Parties Dispute the Strength Of Plaintiffs' Claims and Whether The Claims Can Be Certified Under Rule 23.

Though Plaintiffs believe that their claims are strong and that they would prevail at trial, "there is always risk inherent in a jury trial and that risk cannot be discounted." *Hester,* 2014 WL 1366550, at *4. Moreover, Peri has ardently denied liability and intensively litigated nearly every aspect of this case, an approach that will frustrate Plaintiffs' ability to recover the full damages they seek and protract this litigation even further.[11] Peri has argued that it did not act willfully in failing to pay Plaintiffs and Class Members' first work week minimum wages. That issue will determine whether a two-year or three-year statute of limitations applies to Plaintiffs' FLSA claims and whether Plaintiffs are entitled to liquidated damages. There also is little precedent regarding Plaintiffs' claims under NRS 608.040 and 608.050.

Moreover, while Plaintiffs are confident that this case meets Rule 23's requirements, *see infra* Section V, Peri will challenge class-wide treatment of Plaintiffs' claims if this case is not settled. Peri will argue that the contract claims are not amenable to certification on account of individualized damages questions. *See, e.g.,* Answer at Affirmative Defenses ¶2. Peri also has argued that the minimum wage claims are not amenable to certification because each worker incurred different inbound expenses. *See* Defendant's Response to Plaintiff's Motion for Conditional Certification and Authorization of Court-Approved Notice (Dkt. No. 123). If the Court declines to certify the class, then most absent Class Members will lose their best opportunity to recover from Peri. Settlement, on the other hand, eliminates any risk that Plaintiffs

---

[11] Peri asked the Supreme Court to review the Ninth Circuit's ruling, has opposed FLSA conditional certification, challenged many of Plaintiff's discovery requests, and argued that Plaintiffs should not be permitted to amend their complaint a third time.

would not successfully certify the class and maintain certification through trial. *See, e.g., Harris*, 2012 WL 3277278, at *6 (risk that class certification motion could be denied weighed in favor of preliminary approval); *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-CV-01303-KJM, 2014 WL 7273642, at *6 (E.D. Cal. Dec. 17, 2014) (same).

Based on the inherent uncertainty of a jury trial, the uncertainty of class certification, and other obstacles to establishing liability on Plaintiffs' claims, settlement is advantageous for the Class and should be approved. *See City of Seattle*, 955 F.2d at 1276 (reviewing court should defer to "the private consensual decision of the parties" familiar with the case regarding appropriateness of settlement); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982) (fairness hearing should not be turned into a "rehearsal for trial on the merits" but should assess whether settlement taken as a whole is fair, reasonable, and adequate); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 5 *Moore Federal Practice*, § 23.85[2][b] (Matthew Bender 3d. ed.)) ("proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class").

### 2. Further Litigation Will Be Extensive and Complex and Cause the Parties to Incur Significant Risk and Expense.

Throughout the previous several years of litigation, this case has proved to be complex, expensive, and time-consuming. Plaintiffs' claims involve the interplay between federal regulations governing the H-2A program and federal and state minimum wage laws. These issues already have necessitated one appeal to the Ninth Circuit and a petition for certiorari. Unless the settlement is approved, it is likely the parties will continue to vigorously litigate the case, which – despite its years and the significant investment of time by counsel on both sides– is only at the outset of discovery. *See Hester*, 2014 WL 1366550, at *4 (years of litigation and an appeal,

among other things, suggested parties would continue to litigate for years absent settlement).

Litigation of the parties' claims could involve more than 50 out-of-country depositions (*see* Dkt.

No. 116), taking depositions of Peri's witnesses, briefing class certification, briefing dispositive

motions, and preparing for and conducting trial.[12] *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d

948, 966 (9th Cir. 2009) ("serious hurdles" remaining such defendant's anticipated motion for

summary judgment and appeals that would prolong litigation and recovery by class members,

favored settlement).

### 3. The Amount Offered in Settlement Will Fairly and Adequately Compensate Class Members and Amounts Designated for Settlement Administration and Attorneys' Fees are Reasonable.

#### a. The Proposed Monetary Relief and Allocation Is Fair, Adequate, and Reasonable.

Peri has agreed to pay $2.8 million to resolve the claims alleged in the Second Amended

Complaint. Class Members will receive $1,925,000—or 68.75% of this amount. Plaintiffs' data

analyst has calculated Class Members' losses for unpaid AEWR wages and unpaid minimum

wages, with prejudgment interest calculated at the prime rate.[13] Behar Decl.¶ __. That amount is

$XXX. If XX% of Class Members claim their settlement funds then all claimants will be

compensated for their full unpaid wages. *Id.* ¶ __. Even with a 100% claim rate (which is

extremely unlikely) Class Members will receive XX% of their alleged unpaid wages. *Id.* ¶ __.

The Settlement will be allocated in the same way for all Class Members. Each Class

Member's share of the Settlement Fund will be based on the Class Member's actual AEWR and

---

[12] Because Plaintiffs and class members are migrant workers who reside in rural areas of Mexico and do not speak English, depositions, other discovery, fact-intensive court filings, trial, and other aspects of this litigation will be more time-consuming and costly than the more typical wage and hour lawsuit involving domestic plaintiffs.

[13] This calculation includes alleged unpaid AEWR wages for 2005-2007 and 2010-2011, and it includes unpaid minimum wages for 2009-2011.

minimum wage shortfalls. Because Peri's settlement with the DOL provides compensation for unpaid AEWR wages to H-2A workers employed in 2008 and 2009, Class Members' settlement awards will not reflect unpaid AEWR wages for those years.

In short, this is an eminently reasonable settlement given the risks of proceeding with litigation, uncertainty of class action certification, potential unavailability of penalties such as liquidated damages and waiting time penalties, and the significant value of payment without further delay. *See* Section IV(B)(1) and (2). *See also, e.g., In re Omnivision Technologies,* 559 F. Supp. 2d at 1042 (N.D. Cal. 2008) (recovery of 6% of potential total damages at trial was reasonable because "immediate and certain award" was preferable given risks of litigation); *Villegas,* 2012 WL 5878390, at *6 (holding gross settlement of approximately 15% percent of recovery was reasonable and any "issues concerning the amount of the settlement are better resolved at the final approval hearing).

The value of settlement is enhanced due to the barriers Class Members would face if they attempted to pursue their claims on an individual basis. Given their relatively low individual damages, it would be uneconomical for Class Members to litigate individually, a problem exacerbated by the fact that most live in Mexico and do not have direct access to the United States courts. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir. 2001), *cert. denied,* 534 U.S. 973 (2001) ("*Local Joint Executive Bd.*") (recognizing class treatment is preferable where there is disparity between litigation costs and damages). Accordingly, the amount offered in settlement as well as its proposed allocation weighs strongly in favor of preliminary approval.

### b. The Settlement Administration Costs Are Reasonable.

The parties have allocated $175,000 to pay for the costs of settlement administration. Class Counsel developed the settlement administration plan after careful consideration and

research to ensure that Class Members—Mexican migrant workers, many of whom live in rural or remote areas without reliable access to U.S. mail—will be able to meaningfully receive notice of the settlement and access their settlement funds. Behar Decl. ¶¶ __.

### c. The Agreed-Upon Attorneys' Fees Are Reasonable.

"It is well established that 'a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *Omnivision Technologies*, 559 F. Supp. 2d at 1046 (quoting *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir.1977)). *See also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (in a common fund case, the court "assesses the litigation expenses against the entire fund so that the burden is spread proportionally among those who have benefitted").

To date, Class Counsel has received $413,855.50 for their work on this case from a third party who was interested in the litigation's impact on the rights of Mexican guest workers.[14] *See* Behar Decl. ¶¶ __. Because that payment only represents a small fraction of Class Counsel's time on the case, Class Counsel seeks an additional $700,000 from the Settlement Fund for attorneys' fees and litigation costs. This request is 25% of the common fund created by the negotiated settlement and meets the Ninth Circuit "benchmark" for fee awards.[15] *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (citations omitted) (recognizing that fees of 25% of the fund is the Ninth Circuit "benchmark" and

---

[14] Class Counsel believes that fees higher than the benchmark 25% are justified here in light of the difficulties of this litigation and the significant benefits to the class of the settlement, but has adjusted their fee request in light of the partial compensation they have received. *See, e.g. In re Activision Sec. Litig.*, 723 F. Supp. at 1378 (finding average 30% award); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (recognizing fee awards in range of 30-50% generally come from funds of less than $10 million).

[15] Plaintiffs also are entitled to attorneys' fees pursuant to the FLSA, *see* 29 U.S.C. § 216(b).

"attorneys' fees sought under a common fund theory should be assessed against every class members' share, not just the claiming members"); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (recognizing 25% benchmark, that court may adjust benchmark, and approving attorneys' fees of 33% of settlement fund); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (analyzing cases from multiple jurisdictions, concluding average award was 30% of fund, and absent extraordinary circumstances the rate should be set at 30%).

Awarding fees based on a percentage of the common fund is the "dominant" method in the Ninth Circuit, though district courts also have discretion to utilize the lodestar method. *Omnivision Technologies*, 559 F. Supp. 2d at 1046 (collecting cases). The percentage approach, however, is preferable to the lodestar method because it: (1) provides predictability to class counsel and class members; (2) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable settlement; and (3) reduces the demand on judicial resources. *In re Activision Sec. Litig.*, 723 F. Supp. at 1378–79.

Class Counsel's request for 25% of the common fund is the standard, benchmark fee award repeatedly approved by the Ninth Circuit. *See Six (6) Mexican Workers*, 904 F.2d at 1311; *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379. Additionally, the factors that the Ninth Circuit uses to examine the reasonableness of a fee award: "early settlement, achievement of an excellent result, risk, and a showing of standard fees for similar litigation," support approval of the proposed award in this case. *See Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 477 (E.D. Cal. 2009) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002)).

Although the case has been ongoing and aggressively litigated for several years, settlement is "early" in that the parties achieved it prior to depositions, a motion for class certification, and dispositive motions. The result is good for the class in that Class Counsel

successfully revived the case in the Ninth Circuit, fought off a petition for certiorari to the U.S. Supreme Court, and negotiated a settlement that will compensate class members for a substantial portion of their unpaid wages. *See Omnivision Technologies,* 559 F. Supp. 2d at 1046 ("the overall result and benefit to the class from the litigation is the most critical factor in granting a fee award"). Indeed, this Court's decision to grant Peri's motion to dismiss shows how risky it was for Class Counsel to take on the case and evidences the complexity of the legal issues. *See Vizcaino,* 290 F.3d at 1048 (riskiness demonstrated where counsel "reviv[ed] their case on appeal" and case dealt with complex issues).

Finally, courts routinely award 25% or more of a common fund in complex class wage and hour cases. *See, e.g. Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 492 (E.D. Cal. 2010) (awarding 33.3% of common fund in complex wage and hour class action involving "largely Spanish speaking workers" with undecided issues of law and surveying five other "similar" cases awarding fees ranging from 30 to 33.3% of common fund); *Franco v. Ruiz Food Products, Inc.,* No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012) (awarding 33% of common fund in case with hybrid FLSA and state law claims and surveying nine other "similar" cases awarding fees ranging from 30 to 33.3% of common fund).[16]

The lodestar "cross-check" confirms that Class Counsel's request is reasonable. *See Vizcaino* 290 F.3d at 1047 ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award").[17] In this case, Class Counsel's combined lodestar currently exceeds

---

[16] The reasonableness of Class Counsel's fee request is further evidenced by the fact Peri has agreed not to oppose a fee request of $800,000—fees significantly higher than the amount sought by Class Counsel.

[17] "When a court uses the lodestar as a cross-check to a percentage claim of fees, it need only make a 'rough calculation.'" *Four in One Co. v. S.K. Foods, L.P.,* No. 2:08-CV-3017 KJM EFB, 2014

$XXX,XXX, and Class Counsel has incurred $XX,XXX in litigation expenses. Behar Decl. ¶¶ __; Thierman Decl. ¶¶ __. Even with the partial compensation that Class Counsel received from a third party—a total amount of $413,855.50 —Class Counsel's current *unpaid* fees and litigation expenses exceed $XXX,XXX. Behar Decl. ¶¶ __. Class Counsel's work related to settlement administration and preparing final approval papers will require additional attorney time; by the conclusion of this case, counsel's unpaid attorneys' fees and costs will certainly exceed $700,000.[18]

In sum, based on all relevant factors, Plaintiffs' request for fees of only 25% of the settlement fund is well within reason given the complexities of this case and success achieved for the Class. *See Vizcaino* 290 F.3d at 1051 (recognizing percentage fee award reflected lodestar multiplier of 3.65).

### 4.  Plaintiffs Have Conducted Sufficient Discovery And Investigation to Assess Settlement.

As discussed more fully above, *see supra* Sections II(B) and IV(A), Plaintiffs agreed to settle this case only after nearly four years of litigation, lengthy appeals, review of documents related to the DOL's investigation into Peri's H-2A employment practices, interviews with dozens of class members in Mexico, and a comprehensive analysis of Peri's payroll data. As a

---

WL 4078232, at *13 (E.D. Cal. Aug. 14, 2014) (quoting *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) and collecting cases). *See also In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 306–07 (3d Cir.2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").

[18] Even if the lodestar at that time of final approval is less than the requested fees, courts routinely enhance the lodestar with a "multiplier" to arrive at a reasonable fee, in light of all the circumstances of the case. *See Vizcaino* 290 F.3d at 1051 (recognizing percentage fee award reflected lodestar multiplier of 3.65); *Van Vranken*, 901 F. Supp. at 299 (in lodestar cross-check, determining percentage fee award reflected multiplier of 3.6, which was "well within the acceptable range for fee awards in complicated class action litigation"). Here, a lodestar multiplier would be appropriate—as discussed extensively herein—given the complexity of the case, risk, and success obtained by Class Counsel.

result, Plaintiffs and Class Counsel "had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Hester*, 2014 WL 1366550, at *5.

### 5. In Light of Their Experience and Knowledge of the Case, Class Counsel Believes the Settlement is Reasonable, Fair, and Adequate.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation," *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528 (C.D. Cal. 2004) (citations and internal quotations omitted), and here Class Counsel believes the Settlement is fair, reasonable, and adequate in light of the circumstances of the case. Behar Decl. ¶ __. Class Counsel are experienced wage and hour class action litigators. *Id.* ¶ __. While Class Counsel believes that Plaintiffs' claims are meritorious, they understand that the outcome of class certification, trial, and potential additional appeals are inherently uncertain. Moreover, if this litigation continues, it may be years until Class Members receive any recovery. The Settlement will allow Class Members to promptly recover an amount ranging from their full alleged unpaid AEWR and minimum wages to XX% of that amount, depending on the claims rate. This is a very good outcome given the risks and delays in pressing forward. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citations and internal quotations omitted ("[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation").

### 6. Class Members Informed of the Settlement Have Reacted Positively.

Class Counsel has explained the material terms of settlement to XX Class Members. All have reacted positively and none have voiced any objections. XXX Declaration ¶¶ __. Since the bulk of Class Members will receive notice of the parties' proposed settlement after the Court grants preliminary approval, Plaintiffs will more fully address this issue when they seek final

approval of the settlement. *See Harris*, 2012 WL 3277278, at *7 (reserving consideration of this factor for the final fairness hearing).

### 7. Class Action Fairness Notice.

Defendant will cause notice of the proposed settlement to be served under the Class Action Fairness Act of 2005 ("CAFA"), in compliance with 28 U.S.C. § 1715. *See* Settlement Agreement § IV(P)(1).

## V.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

To facilitate the proposed settlement, Plaintiffs respectfully request that the Court conditionally certify the following settlement Class pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b): "All H-2A workers whom Defendant Peri & Sons employed between February 16, 2005 and December 31, 2011." As demonstrated below, all of the criteria for certifying a class are satisfied in this case, and the parties have stipulated to conditional certification for settlement purposes. *See* Settlement § IV(H)(2).

### A. The Requirements of Rule 23(a) Are Satisfied.

Here, there are approximately 3,500 class members. CITE. As a result, joinder is impracticable, and the class meets Rule 23(a)'s numerosity requirement. *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) (recognizing numerosity generally is satisfied where there are 40 class members and collecting cases).

"A class has sufficient commonality 'if there are questions of law and fact common to the class.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(2). Here, the common issues include: (1) whether Peri breached its work contracts with H-2A workers by paying them below the AEWR; and (2) whether Peri's failure to reimburse certain travel and immigration expenses resulted in minimum wage violations in the putative class members' first work week. Both issues require the Court to evaluate Peri's common wage

payment policies, applicable to all H-2A workers at its Nevada farm.[19] In sum, Class Members' claims "depend on a common contention…of such a nature that [they are] capable of classwide resolution," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and thus meet the commonality requirement of Rule 23(a)(2). *See, e.g., Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 648 (M.D. Fla. 2012) (commonality met for H-2A claims for failure to pay AEWR and to reimburse pre-employment expenses); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 629 (M.D. Fla. 2010) (same); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247-49 (W.D. Ark. 2010) (same).

The typicality requirement is similarly satisfied. Typicality exists where the class representatives' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). Factual differences may exist between the class members and the class representatives, provided the claims arise from the same events or course of conduct and are based on the same legal theories. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Peri employed all Plaintiffs and Class Members as H-2A workers at its Nevada farm, Plaintiffs and Class Members performed the same kind of work (harvesting and packaging onions), and all entered into H-2A employment contracts that were governed by the federal H-2A regulations. *See* 20 C.F.R. § 655.122(l) and (q). Additionally, all Class Members incurred travel and immigration expenses to travel from their homes in Mexico to obtain H-2A visas and work at Peri's farm, and Peri never reimbursed those expenses in their first workweek.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This rule is satisfied as well. The Ninth Circuit has held that adequacy

---

[19] Any differences between the Class Members' claims represent differences in their damages, not liability. As is evident from review of Peri's electronic payroll data, Class Members' damages are reasonably ascertainable.

is evaluated by assessing: (1) whether the named plaintiffs or their counsel have any conflicts of interest with other class members, and (2) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. *See Staton*, 327 F.3d at 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020 and other cases). *See also Local Joint Executive Bd.*, 244 F.3d at 1162 (stating adequacy depends on "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive" (citations omitted)).

Here, neither Plaintiffs nor their counsel have interests antagonistic to those of other Class Members. To the contrary, Plaintiffs share with absent Class Members an interest in recovering the unpaid wages they allegedly are owed. Further, the Settlement provides that Plaintiffs and absent Class Members' settlement shares will be calculated identically. Settlement § IV(E).

In addition, Class Counsel has extensive experience in wage and hour and other class actions, as well as experience representing migrant workers. Behar Decl. ¶¶ ___; Thierman Decl. ¶¶ ___. Plaintiffs' successful appeal to the Ninth Circuit is strong evidence of Class' Counsel's desire and ability to vigorously prosecute this action on behalf of the class.

### B. The Requirements of Rule 23(b) Are Satisfied.

Rule 23(b) permits class certification where both "questions of law and fact common to class members predominate over any questions affecting individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both components of the Rule are satisfied here.[20]

---

[20] Where, like here, the Court need only evaluate certification for purposes of settlement, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The predominance inquiry "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd.*, 244 F.3d at 1162 (quoting *Hanlon*, 150 F.3d at 1022). In this case, Class Members have alleged the same claims for breach of contract and unpaid minimum wages. Thus, the Class shares a common nucleus of facts, potential legal remedies, and damages, and meets the predominance requirement.

Indeed, courts evaluating similar H-2A contract claims have found them appropriate for class certification. *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 648 (M.D. Fla. 2012); *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 629 (M.D. Fla. 2010); *Perez-Benites v. Candy Brand, LLC*, 267 F.R.D. 242, 247-49 (W.D. Ark. 2010); *Napoles-Arcila v. Pero Family Farms, LLC*, No. 08-80779-CIV, 2009 WL 1585970, at *8 (S.D. Fla. June 4, 2009). In addition, courts routinely certify breach of contract claims where, as here, the claims arise from an alleged breach of a standard form contract. *See Vedachalam v. Tata Consultancy Servs.*, 2012 WL 1110004, at *15 (N.D. Cal. Apr. 2, 2012); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) ("[C]laims arising out of form contracts are particularly appropriate for class action treatment."); *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 693 (N.D. Ga. 2003) ("Breach of contract claims are certifiable as appropriate for class action."); contract cases are routinely certified as such.").

Courts evaluating minimum wage claims based on failure to reimburse pre-employment expenses in the first work week also consistently have found they are appropriate for class-wide treatment. *See Garcia-Celestino*, 280 F.R.D. at 648; *Perez-Benites v. Candy Brand, LLC*, 267

26

F.R.D. at 247-49; *Napoles-Arcila*, 2009 WL 1585970, at *5-9; *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 690 (S.D. Fla. 2007) ("All class members were H–2A workers . . . during the 2006–07 vegetable harvest season, and all claim that they were not properly reimbursed for their pre-employment expenses.").

In addition, individual cases brought by thousands of Class Members would not be feasible given the relatively small size of most Class Members' individual damages. *See Hanlon*, 150 F.3d at 1023 (class action preferable because individual claims would unnecessarily burden the judiciary and prove uneconomic for plaintiffs because "litigation costs would dwarf potential recovery"). Moreover, Class Members are migrant agricultural workers, many of whom reside in Mexico, do not fluently speak English, and do not have easy access to the U.S. courts or legal counsel. The class action mechanism will allow large numbers of Class Members to obtain compensation that would otherwise be unavailable due to these barriers.

### C. The Requirements of Rule 23(g) Are Satisfied.

Rule 23(g) of the Federal Rules of Civil Procedure requires the Court to appoint Class Counsel whenever it certifies a class. The declaration of counsel submitted herewith provides the Court with sufficient information to appoint Plaintiffs' counsel as Class Counsel under Rule 23(g). It details the work that Class Counsel has performed to investigate potential class claims, Counsel's extensive experience in handling class actions and wage and hour claims of the type asserted in the action, and the resources that Counsel will commit to representing the class. *See* Behar Decl. ___; Thierman Decl. ___ and factors listed in Rule 23(g)(1)(C)(i).

### D. The Requirements of 29 U.S.C. § 216(b) Are Satisfied.

Finally, the Class can be certified under the FLSA because all Class Members are similarly situated. 29 U.S.C. § 216(b). To determine whether Class Members are similarly

situated, the Court must consider whether "putative class members were victims of a common policy or plan that violated the law." *Ruiz v. Spallitta*, No. 2:10-CV-01312-GMN, 2012 WL 727298, at *2 (D. Nev. Mar. 6, 2012). *See also Rodriguez v. SGLC, Inc.*, No. 208-CV-01971-MCE-KJM, 2009 WL 454613, at *2 (E.D. Cal. Feb. 5, 2009) (finding allegations that defendants violated FLSA by shifting travel and immigration-related costs to plaintiffs such that plaintiffs' first week's wages fell below the federal minimum wage constituted a common policy or plan); *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 323 (N.D. Cal. 2013) (granting conditional certification for settlement where putative class members "were subject to the same policy that resulted in Defendant's failure to pay them overtime wages").

Here, all Class Members are H-2A employees who worked at Peri's Nevada farm, incurred inbound travel and immigration expenses and allegedly were not paid the minimum wage because Peri did not reimburse those expenses in the first work week. This was a standard policy or practice, applicable to all H-2A employees, rendering Class Members similarly situated. As a result, certification of the Class under 29 U.S.C. § 216(b) is appropriate. *See also* Plaintiffs' Memorandum In Support of Motion for Conditional Certification and Authorization of Court-Approved Notice (Dkt. No. 101) (providing legal authority and 17 declarations from Plaintiffs and Class Members in support of conditional certification).

## VI.   THE PROPOSED FORM AND MANNER OF CLASS NOTICE ARE APPROPRIATE AND SATISFY DUE PROCESS.

Rule 23(c)(2)(B) requires the Court to direct notice of the settlement using the best method that is practicable under the circumstances. Here, the Settlement Administrators will disseminate notice by: (1) mail, through the Mexican postal system, using addresses from Peri's employee records; (2) posting the notice at Peri's Nevada farm; (3) distributing the notice to Class Members who still work at Peri by delivering it along with their weekly paychecks; and (4)

having messengers perform outreach and hand-deliver the notice to workers in Mexico. This comprehensive notice plan is reasonable because it is tailored to the circumstances of the class, and designed to ensure that as many Class Members as possible meaningfully receive notice. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 n.2 (9th Cir. 1990) (Rule 23 and due process notice requirements met in migrant worker case by "mailing notice to those persons for which accurate addresses existed, publication and radio announcements in relevant U.S. and Mexican newspapers, and posting"); *Montelongo v. Meese,* 803 F.2d 1341, 1351 (5th Cir.1986) (holding that in a migrant worker case, mailing notice to all persons reasonably locatable, radio and newspaper announcements, and personal outreach to class members satisfied notice requirements).

In addition, the proposed Class Notice, attached as Exhibits B and C to the Settlement Agreement, is based on the model form recommended by the Federal Judicial Center and fully meets the criteria of Rule 23(c)(2)(B). Specifically, the proposed Class Notice informs Class Members, in Spanish, of the following: (a) the claims in this case and the claims that Class Members will forfeit if they participate in the Settlement; (b) the material terms of the proposed Settlement, including the method by which Class Members' individual settlement awards will be calculated; (c) Class Members' rights under the proposed Settlement; (d) the amounts that will be requested for attorney's fees and litigation expenses and for costs of settlement administration; (e) how to participate in, request to be excluded from, or object to the Settlement, and details regarding the final approval hearing.

Accordingly, Plaintiffs ask the Court to approve the Notice and Claim Forms attached as to the Settlement Agreement and the notice plan proposed in the Settlement Agreement.

## VII.   CONCLUSION.

Because the parties' Settlement Agreement fully comports with Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216, Plaintiffs respectfully request that the Court preliminarily approve the Settlement Agreement and enter the Proposed Order attached hereto as Exhibit 2.